UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Lorraine J. LaBonte, Individually
and as the Administratrix of
the Estate of Allen Field,
    Plaintiff

    v.                                       Case No. 14-cv-529-SM
                                            Opinion No. 2015 DNH 221
Town of Epsom, New Hampshire;
Dana Flanders; and Wayne Preve,
    Defendants


**O R D E R**

On July 7, 2013, Allen Field died from injuries sustained in an automobile accident after he lost control of his car, which then struck a tree at a high rate of speed. At the time, Field was attempting to evade Officer Dana Flanders, an Epsom, New Hampshire, police officer. The administratrix of Field's estate brings this suit against Officer Flanders, the Town of Epsom, and its Chief of Police, Wayne Preve. In her second amended complaint, plaintiff advances two constitutional claims, over which this court has federal question jurisdiction. See 28 U.S.C. § 1331. She also advances five common law claims, over which she asks the court to exercise supplemental jurisdiction. See 28 U.S.C. § 1367.

Pending before the court is defendants' motion to dismiss the two federal claims advanced against them, asserting that

neither states a viable cause of action.  See Fed. R. Civ. P. 12(b)(6).  Defendants also move the court to remand plaintiff's remaining common law claims to state court.  For the reasons discussed, defendants' motion is granted.

**Standard of Review**

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader."  SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010).  Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Instead, the facts alleged in

the complaint must, if credited as true, be sufficient to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." Id. at 570. If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Tambone, 597 F.3d at 442.

## Background

Accepting the second amended complaint's factual allegations as true — as the court must at this juncture — the relevant background is a follows. In the early morning of July 7, 2013, Officer Flanders was on patrol in the Town of Epsom. He was driving a marked Ford Crown Victoria police cruiser. At approximately 12:55 AM, he observed "more than usual" light behind the Epsom Central School and went to investigate. Second Amended Complaint (document no. 12) at para. 13. As he proceeded down the driveway to the school, Officer Flanders saw a vehicle traveling at a high rate of speed in an easterly direction on Water Street. He did not recognize the driver, nor could he identify the make or model of the vehicle. The only distinguishing feature he was able to discern was the vehicle's "blue headlights." See Id. at paras. 15, 41. That vehicle was being driven by the decedent, Allen Field.

Officer Flanders activated his emergency lights and began pursuing the vehicle. Field refused to stop.[1] Officer Flanders followed the vehicle onto Black Hall Road, which had a posted speed limit of thirty-five miles per hour (35 mph). At one point during his pursuit of Field, Officer Flanders passed a slower-moving vehicle, at which time he was traveling at least sixty miles per hour (60 mph). Id. at para. 34. Field then turned onto New Rye Road, at which point Flanders says he "stopped trying catch up to the vehicle." Id. at para. 43 (citing Flanders' deposition testimony). Nevertheless, the complaint alleges that Officer Flanders continued his high-speed pursuit of the vehicle until he reached the area near 241 New Rye Road. Id. at para. 44. There, Officer Flanders discovered that Field had lost control of his vehicle and collided with a tree. Field was bleeding and unresponsive. Officer Flanders checked Field for a pulse, but was unable to detect any. He then contacted the dispatch officer, reported the accident, and asked that emergency responders be sent to the scene. Shortly thereafter, Field was pronounced dead.

---

[1] According to the complaint, Field had a "history of driving infractions" and had received "several motor vehicle warnings and/or citations" from various Epsom police officers. Id. at paras. 19-20. The complaint implies that Field may have been concerned that if he stopped and if he had been ticketed for speeding by Officer Flanders, his driver's license may have been suspended. Id.

**Discussion**

As noted above, the second amended complaint advances two federal constitutional claims. In the first, plaintiff alleges that Officer Flanders violated Field's constitutionally protected right to substantive due process by engaging in conscience-shocking behavior that proximately caused Field's death. Next, plaintiff asserts that the Town of Epsom had a "practice or custom of failing to adequately ensure proper training" of its police officers — a failure that amounted to deliberate indifference to the health, safety, and welfare of Epsom residents, including Field.

I.   Officer Flanders - Substantive Due Process.

The complaint alleges that Officer Flanders violated town policy by initiating (and maintaining) an "unwarranted" pursuit of Field, and violated various state laws during the course of that pursuit. Id. at paras. 86, 124. It goes on to assert that Officer Flanders' "decision to conduct a dangerous, reckless, high-speed pursuit absent justification was made with callous indifference to Field's constitutional rights." Id. at para. 128. And, finally, it alleges that "it was foreseeable that Flanders' unauthorized, high-speed pursuit would likely result in the deprivation of Field's constitutional right to life, and thus

constituted conscious [sic] shocking behavior." Id. at para. 129.

As troubling as those allegations may be, they fail to state a viable claim that Officer Flanders deprived Field of his constitutionally protected right to substantive due process. As the Supreme Court has made clear — at least in the unusual circumstances presented by police pursuits — allegations of "deliberate indifference to [the suspect's] survival," or "conscious disregard for [the suspect's] safety," or even "reckless disregard for life" are, without more, insufficient to state a viable substantive due process claim under the Fourteenth Amendment. County of Sacramento v. Lewis, 523 U.S. 833, 854 (1998) (Souter, J.).

In Lewis, the Court was presented with a case involving a police officer's high-speed pursuit of the operator of a motorcycle. That pursuit ended when the operator attempted to take a sharp turn, his passenger fell off the back, and the pursuing officer then collided with the fallen passenger, inflicting massive injuries that caused the passenger's death. In addressing the plaintiff's claim that the officer violated the decedent's constitutionally protected right to substantive due process, the Court reiterated its longstanding admonition that

the Fourteenth Amendment's Due Process Clause is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." Id. at 848 (citation omitted). The Court explained that:

> We have emphasized time and again that the touchstone of due process is protection of the individual against arbitrary action of government.
>
> * * *
>
> To this end, for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience.

Id. at 845-46. It then noted that it is only behavior at the far end of "the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 849.

Turning to the facts of the case before it, the Court concluded that they failed to support the conclusion that the police officer's conduct "shocked the conscience" in the constitutional sense.

> [The Officer] was faced with a course of lawless behavior for which the police were not to blame. They had done nothing to cause Willard's high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to

the Fourteenth Amendment's Due Process Clause is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." Id. at 848 (citation omitted). The Court explained that:

> We have emphasized time and again that the touchstone of due process is protection of the individual against arbitrary action of government.
>
> * * *
>
> To this end, for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience.

Id. at 845-46. It then noted that it is only behavior at the far end of "the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 849.

Turning to the facts of the case before it, the Court concluded that they failed to support the conclusion that the police officer's conduct "shocked the conscience" in the constitutional sense.

> [The Officer] was faced with a course of lawless behavior for which the police were not to blame. They had done nothing to cause Willard's high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to

> control traffic, and nothing (beyond a refusal to call
> off the chase) to encourage him to race through traffic
> at breakneck speed forcing other drivers out of their
> travel lanes. Willard's outrageous behavior was
> practically instantaneous, and so was [the officer's]
> instinctive response. While prudence would have
> repressed the reaction, the officer's instinct was to
> do his job as a law enforcement officer, not to induce
> Willard's lawlessness, or to terrorize, cause harm, or
> kill. Prudence, that is, was subject to countervailing
> enforcement considerations, and while [the officer]
> exaggerated their demands, there is no reason to
> believe that they were tainted by an improper or
> malicious motive on his part.

Lewis, 523 U.S. at 855. Consequently, the Court concluded that allegations that a police officer caused another's "death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender" are, without more, insufficient to state a claim under the Fourteenth Amendment. Id. at 836. Instead, "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." Id. See also Id. at 854 ("Accordingly, we hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983.").

Here, the complaint lacks any allegation that Officer Flanders acted with "an intent to harm" Field "unrelated to the

8

legitimate object of arrest." Indeed, given the facts alleged, it is hard to imagine how plaintiff could plausibly (and in good faith) make such a claim. While the complaint asserts that Field was well-known to officers in the Epsom Police Department (and implicitly suggests that Officer Flanders recognized Field, understood his motivation to flee, and sought somehow to "worsen his legal plight"), it also plainly states Officer Flanders did not know Field was operating the vehicle he was pursuing. Until he came upon the accident scene, Officer Flanders did not know who was operating the vehicle, nor could he even describe the vehicle (beyond the fact that it had "blue headlights"). See Second Amended Complaint at paras. 15 and 41.[2]

Given the absence of factual allegations that would plausibly support the assertion that Officer Flanders intended to harm Field unrelated to the legitimate object of arrest, the second amended complaint fails to state a viable claim that he

---

[2] Plaintiff places substantial weight on her claim that Officer Flanders violated Town policy in pursuing Field and may have also violated various state laws applicable to police pursuits (e.g., the requirement that officers activate both emergency lights and a siren during a pursuit). But, even assuming the truth of those allegations, and even assuming they might support a claim of "deliberate indifference," they do not rise to the requisite level of "conscience-shocking" behavior. See Lewis, 523 U.S. at 855. See also Boveri v. Town of Saugus, 113 F.3d 4, 7 (1st Cir. 1997); Steen v. Myers, 486 F.3d 1017, 1023-24 (7th Cir. 2007); Ward v. City of Bos., 367 F. Supp. 2d 7, 13-14 (D. Mass. 2005) (collecting cases).

violated Field's Fourteenth Amendment right to substantive due process. Consequently, that count is subject to dismissal.

II. <u>The Town of Epsom - Unconstitutional Custom or Policy</u>.

Next, plaintiff alleges that the Town of Epsom "had a practice or custom of failing to adequately ensure proper training regarding compliance with its Policy regarding police pursuits." Second Amended Complaint, at para. 118. Plaintiff then asserts that, as a proximate result of the Town's failure to properly train its police officers, Officer Flanders, "while acting under color of state law, initiated a reckless, high speed pursuit of Allen Field." <u>Id.</u> at para. 120. And, finally, plaintiff alleges that Officer Flanders' wrongful pursuit of Field "ultimately resulted in Field's death and a deprivation of his constitutional right to life." <u>Id.</u> at para. 122. Plaintiff seeks to impose liability on the Town for its (allegedly) constitutionally deficient custom or policy of inadequate police training pursuant to 42 U.S.C. § 1983. <u>See also</u> <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

Plaintiff's constitutional claim against the Town of Epsom can be resolved fairly quickly. Because the second amended complaint does not plausibly allege that Officer Flanders violated Field's constitutional rights, the Town cannot be liable for having maintained an allegedly unconstitutional custom or policy regarding officer training. As the Supreme Court has observed:

> [N]either Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.

Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (emphasis in original). See also Calvi v. Knox County, 470 F.3d 422, 429 (1st Cir. 2006) ("We need not probe this point too deeply for — regardless of the training afforded or the lack of training — it is only when a governmental unit's employee inflicts a constitutional injury that the governmental unit can be held liable under section 1983. It follows that the inadequate

11

training of a police officer cannot be a basis for municipal liability under section 1983 unless a constitutional injury has been inflicted by the officer or officers whose training was allegedly inferior.") (citations omitted).

Because the second amended complaint fails to state a viable claim that Officer Flanders violated Field's constitutional rights, plaintiff's claim against the Town for having maintained a constitutionally deficient custom or policy necessarily fails.

III. Plaintiff's State Common Law Claims.

There is no suggestion in the pleadings that the court may properly exercise subject matter jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1332 (diversity of citizenship). Consequently, having concluded that defendants are entitled to dismissal of the two federal claims advanced in the second amended complaint, the court must next determine whether it is appropriate to exercise supplemental jurisdiction (formerly known as "pendent jurisdiction") over plaintiff's claims of negligence and wrongful death. See generally 28 U.S.C. § 1367. Section 1367 provides that the court may decline to exercise supplemental jurisdiction over a plaintiff's state law claim when:

>   (1)   the claim raises a novel or complex issue of State law,
>
>   (2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
>   (3)   <u>the district court has dismissed all claims over which it has original jurisdiction</u>, or
>
>   (4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis supplied). To assist district courts, the Court of Appeals for the First Circuit has identified the following additional factors that should be considered when determining whether to exercise supplemental jurisdiction over state law claims: (1) the interests of fairness; (2) judicial economy; (3) convenience; and (4) comity. See <u>Camelio v. American Fed'n</u>, 137 F.3d 666, 672 (1st Cir. 1998). And, with regard to principles of fairness and comity, the Supreme Court has observed:

>   Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

<u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966) (footnote omitted). See also <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-

13

law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."); Rivera-Diaz v. Humana Ins. of P.R., 748 F.3d 387, 392 (1st Cir. 2014) (upholding district court's decision declining to exercise supplemental jurisdiction).

Because the court has dismissed all federal claims in plaintiff's second amended complaint, and given that this case is at an early stage in the litigation, and taking into consideration the remaining factors identified in Camelio, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

## Conclusion

For the foregoing reasons, plaintiff's second amended complaint fails to plausibly allege the essential elements of viable federal claims against Officer Flanders or the Town of Epsom. Accordingly, defendants' motion to dismiss (document no. 13) is granted and those claims (counts six and seven) are dismissed. The court declines to exercise supplemental jurisdiction over plaintiff's state common law claims (counts one

through five), which are remanded to the New Hampshire Superior Court (Merrimack County).

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

                                    _____
                                    Steven J. McAuliffe
                                    United States District Judge

December 3, 2015

cc: John J. Cronin, III, Esq.
    Peter M. Durney, Esq.
    Andrew B. Livernois, Esq.